

Caution
As of: October 3, 2018 2:46 PM Z

# United States v. Galitsa

United States District Court for the Southern District of New York

July 28, 2017, Decided; July 28, 2017, Filed

17-CR-00324 (VEC)

**Reporter**
2017 U.S. Dist. LEXIS 185550 *

UNITED STATES OF AMERICA, -against- THIODORE IGOROVICH GALITSA, Defendant.

## Core Terms

Bail, removal, detention, detained, alien, custody, pre-trial, conditions, magistrate judge, pending trial, provides, criminal proceeding, judicial officer, immigration, regulations, appearance, provisions, arrested, reentry, criminal case

**Counsel:** [*1] For Thiodore Igorovich Galitsa, aka: Kres Kornik, Fyodor Galitsa-Igorovich, Tiodore Galitsa, Fedor Galitsa, Fyodor Halista, Defendant: Martin Samuel Cohen, LEAD ATTORNEY, Jonathan Andrew Marvinny, S. Isaac Wheeler, Federal Defenders of New York Inc. (NYC), New York, NY USA.

For U. S.: Brian Roger Blais, LEAD ATTORNEY, U.S. Attorney's Office, SDNY, New York, NY USA; Michael Kim Krouse, LEAD ATTORNEY, Brooke Elizabeth Cucinella, United States Attorney's Office, SDNY, New York, NY USA.

**Judges:** VALERIE CAPRONI, United States District Judge.

**Opinion by:** VALERIE CAPRONI

## Opinion

MEMORANDUM ORDER

VALERIE CAPRONI, United States District Judge:

Thiodore Igorovich Galitsa ("Galitsa") is charged with one count of illegal reentry into the United States, *8 U.S.C. §§ 1326(a), (b)(1)*, and one count of making a false statement to an officer of the Department of Homeland Security, *18 U.S.C. § 1001(a)(2)*. On April 25, 2017, Magistrate Judge Fox set conditions for Galitsa to be released pending trial. Dkt. 5. The Government did not seek review of the Magistrate Judge's release determination. Instead, the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") took Galitsa into its custody pursuant to an ICE detainer. ICE promptly returned Galitsa to pre-trial detention [*2] pursuant to a writ of habeas corpus *ad prosequendum*. Although Galitsa satisfied the conditions of his bail more than two months ago, he remains in federal custody.

Galitsa moves to compel the Government to release him in accordance with the conditions of his bail, or alternatively, to dismiss the indictment. Dkt. 18. For the reasons that follow, Galitsa's motion is GRANTED. The Government is directed to release Galitsa or dismiss the indictment by **12:00 noon on July 31, 2017**.

## BACKGROUND

Galitsa was arrested by ICE agents on April 15, 2015. *See* Compl. (Dkt. 1) ¶ 8. Because he is subject to a reinstated order of removal, ICE could have pursued Galitsa's immediate removal at that time.[1] Instead, ICE released Galitsa from custody. Acting pursuant to its authority under *8 U.S.C. § 1231(a)(3)* and regulations promulgated thereunder, *see 8 C.F.R. § 241.4*, ICE placed Galitsa in the Intensive Supervision & Appearance Program. *See* Affirmation of Martin Cohen, Esq. ("Cohen Aff.") (Dkt. 20) Ex. B; *see also 8 C.F.R. § 241.5(a)* (providing for orders of supervision in

---

[1] Galitsa has a history of illegal reentry. He was ordered removed from the country in 1998, after being convicted of burglary. Compl. ¶ 4(d). Galitsa was caught attempting to enter the country in Texas by the Border Patrol in 2008, convicted of illegal reentry, and removed. Compl. ¶¶ 4(f), 4(g). Galitsa was convicted of illegal reentry and ordered removed for the third time in 2011, after the Border Patrol again caught him crossing the border in Texas. Compl. ¶¶ 4(j), 4(l). Galitsa's perseverance would be admirable if he were not a criminal.

connection with release of aliens pending removal). Galitsa remained in the country under ICE supervision.

Approximately two years after his initial arrest, Galitsa was again arrested, this time [*3] during a meeting with ICE officers based on a complaint sworn out by an ICE agent on April 25, 2017. Compl.; Cohen Aff. ¶ 5.[2] The complaint charged Galitsa with illegal reentry — the crime for which he was arrested in April 2015 - and making false statements to ICE officers investigating the circumstances of his presence in this country. Compl. ¶¶ 1, 2. Galitsa was presented before Magistrate Judge Fox on April 25, 2017. Dkt. 5. Over the Government's objection, Magistrate Judge Fox set conditions for his release, finding that Galitsa "has ties to the community, family ties . . . [h]e assists his mother, who lives in the jurisdiction, and the work that she performs, caring for another." Bail Tr. (Gov't Opp'n (Dkt. 22) Ex. A) at 15:12-17. Magistrate Judge Fox further found that Galitsa presented "no danger" to the community and that "rather than flee, the defendant wants to be in the United States." Bail Tr. at 16:2-15. The Magistrate Judge set strict conditions for his release including: (1) a $50,000 personal recognizance bond, co-signed by two financially responsible persons; (2) surrender of Galitsa's travel documents; (3) pretrial supervision; and (4) home incarceration with electronic [*4] monitoring. Dkt. 5. On May 3, 2017, Galitsa satisfied the conditions of his release and was "released" from pre-trial detention. Dkt. 7.

It was at that point that the facts of Galitsa's detention took a turn towards the Kafkaesque. ICE had previously lodged a "detainer" against Mr. Galitsa. Cohen Aff. Ex. E. The detainer directs other Government agencies, including the U.S. Marshals, to notify ICE if an alien subject to a final order of removal is to be released so that ICE can take custody. See Cohen Aff. Ex. E; see generally 8 C.F.R. § 287.7(a) (providing for issuance of detainers). Thus, instead of actually being released, Galitsa was transferred from the U.S. Marshals' custody to ICE custody.[3] Six days later, on May 11, 2017, Galitsa was transported back to the Metropolitan Detention Center in Brooklyn, New York (the "MDC") pursuant to a writ of habeas corpus *ad prosequendum* to face the criminal charges pressed by ICE in this case. Cohen Aff. ¶ 8. In other words, less than two weeks after he satisfied the conditions set for his release by a neutral and detached magistrate judge and was "released" from pre-trial detention, Galitsa found himself detained in the very same prison, facing the very same [*5] charges. In the Government's view, however, things have changed: although Galitsa is back at the MDC, he is now in ICE custody. Gov't Opp'n (Dkt. 22) at 1, 5. The Government concedes, as it must, that the U.S. Attorney's Office, the U.S. Marshals, and ICE are all part of a single executive branch.

On June 19, 2017, Galitsa moved to dismiss the indictment, or, in the alternative, to compel his release from custody. Dkt. 18. According to Galitsa, his detention by ICE is a thinly-veiled attempt to circumvent Magistrate Judge Fox's release determination. Mem. (Dkt. 19) at 1. He argues that Section 203 of the Bail Reform Act (codified at 18 U.S.C. § 3142), provides the exclusive basis to detain a criminal defendant pending trial. Mem. at 7. As such, the Government's reliance on ICE to hold Galitsa pending trial at the MDC violates the *Bail Reform Act*, and, potentially, the *Fifth*, *Sixth*, and *Eighth Amendments*. Mem. at 2. The Government does not concede that Galitsa is being detained by ICE for pre-trial purposes. Gov't Opp'n at 7 ("there is no evidence whatsoever that ICE's [detention of Galitsa] was intended as an end-run around Judge Fox's bail determination"). Moreover, the Government argues, nothing in the Bail Reform Act prohibits ICE from [*6] separately detaining Galitsa pursuant to its authority under the *Immigration and Naturalization Act* (the "INA"). See Gov't Opp'n at 4, 6; see also 8 U.S.C. § 1231(a)(2) (providing for detention of aliens subject to orders of removal).

The critical question in this case is whether ICE is detaining Galitsa for the purposes of removing him from the United States or in furtherance of this criminal proceeding. The Court held a hearing to resolve this issue on July 27, 2017. At the hearing, the Government conceded, forthrightly, that, since detaining Galitsa, ICE has taken no steps to effectuate his removal from the country. Hr'g Tr. at 3:17-20. The Government also conceded that ICE will not remove Galitsa until after his criminal case is concluded, including any sentence of incarceration that he might be ordered to serve if he is convicted. Hr'g Tr. at 4:5-10.

---

[2] In the interim, ICE was investigating Galitsa's story regarding his removal in 2011, which the Government now alleges was untrue. In 2015, Galitsa told ICE that the agents who were supposed to remove him in 2011 released him at the airport instead of placing him on an airplane out of the country. See Compl. ¶¶ 11(a), 11(b).

[3] ICE was the arresting agency, so Galitsa's custody went from ICE (arresting officers) to the U.S. Marshals (which maintain custody of pre-trial detainees) and then back to ICE.

## DISCUSSION

The Bail Reform Act "requires a judicial officer to determine whether an arrestee shall be detained" pending trial. United States v. Salerno, 481 U.S. 739, 742, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987) (citing 18 U.S.C. § 3141(a)). Pursuant to Section 203 of the Bail Reform Act, the judicial officer — in this case a Magistrate Judge - "shall order the pretrial release of the person . . . , unless the judicial officer determines that such release will not reasonably [*7] assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b); United States v. Sabhnani, 493 F.3d 63, 75 (2d Cir. 2007). The Bail Reform Act's preference for pre-trial release, subject to conditions, reflects Congress's "considered response to numerous perceived deficiencies in the federal bail process. By providing for sweeping changes in both the way federal courts consider bail applications and the circumstances under which bail is granted, Congress hoped to 'give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released.'" Salerno, 481 U.S. at 742 (quoting S. Rep. No. 98-225, at 3, reprinted in 1984 U.S.C.C.A.N. 3182, 3185); see also United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. 1986) (the Bail Reform Act retains "the traditional presumption favoring pretrial release 'for the majority of Federal defendants.'" (quoting S. Rep. No. 98-225 at 6-7)). Section 3142 permits a judicial officer to order pre-trial detention of an arrestee, but only if, after a hearing, the judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e)(1).

District courts, sitting [*8] outside this Circuit, have found that the Bail Reform Act provides the exclusive means by which the Government may detain a removable alien pending trial in a criminal case. Apparently the first case to so hold is United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167 (D. Or. 2012). In Trujillo-Alvarez, the Government charged an alien subject to an order of removal with one count of illegal re-entry. 900 F. Supp. 2d at 1171. A magistrate judge ordered the defendant released pending trial. Id. at 1172. Just as with Galitsa, instead of releasing the defendant, the Government transferred him to ICE custody pursuant to a detainer. Id. The defendant moved for an order to compel his release and for contempt of court, arguing, as Galitsa does, that the Government may not circumvent the Bail Reform Act by relying on ICE's detention authority under the INA. Id. After a hearing, the Court agreed with the defendant and held that:

> [T]he Executive Branch has a choice to make. It may take an alien into custody for the purpose of removing or deporting that individual or it may temporarily decline to do so while criminal proceedings are maintained against that person . . . . If, however, ICE declines to take custody of [the defendant] for the purpose of removing or deporting him, then, as Congress plainly [*9] declared in the [Bail Reform Act], such a person shall be treated 'in accordance with the other provisions' of that law, which require his pretrial release . . . . What neither ICE nor any other part of the Executive Branch may do, however, is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the [Bail Reform Act].

Id. at 1179 (quoting 18 U.S.C. § 3142(d)). Nothing prevents ICE from detaining a criminal defendant for the purpose of removing him from the United States, but ICE may not use its detention authority in order to hold an alien for criminal proceedings. Cf. United States v. Santos-Flores, 794 F.3d 1088, 1091 (9th Cir. 2015) (explaining in the context of bail determinations that "having made [the] choice" to prosecute a removable alien, "the government may not use its discretionary power of removal to trump a defendant's right to an individualized determination under the Bail Reform Act"). Numerous district courts[4] have adopted the

---

[4] See United States v. Blas, No. Crim. 13-0178-WS-C, 2013 U.S. Dist. LEXIS 135283, 2013 WL 5317228, at *6 (S.D. Ala. Sept. 20, 2013) ("[T]o the extent it is [the Government's] position, that [it] retains the ability at all times to simply take [the defendant] into administrative custody, such position cannot be countenanced by this Court . . . because while ICE may well have the ability to take an alien like [the defendant] back into administrative custody for the purpose of deporting him, 'nothing permits ICE . . . to disregard the congressionally mandated provisions of the [Bail Reform Act] by keeping a person in detention for the purpose of delivering him to trial . . . .'" (quoting Trujillo-Alvarez, 900 F. Supp. 2d at 1178)). See also United States v. Hernandez-Bourdier, Crim. No. 16-222-2, 2017 U.S. Dist. LEXIS 1154, 2017 WL 56033, at *11 (W.D. Pa. Jan. 5, 2017); United States v. Stepanyan, No. 15-CR-234-CRB, 2015 U.S. Dist. LEXIS 96484, 2015 WL 4498572, at *3 n.4 (N.D. Cal. July 23, 2015); United States v. Clemente-Rojo, Crim. No. 14-10046-MLB, 2014 U.S. Dist. LEXIS 49614,

reasoning in *Trujillo-Alvarez* and the Government acknowledged at the hearing that it is aware of no contrary authority. Hr'g Tr. at 22:8-13.

The Court finds *Trujillo-Alvarez* to be persuasive.[5] The text and [*10] structure of *Section 3142* suggest strongly that once the Government chooses to proceed with a criminal prosecution the Bail Reform Act provides the exclusive authority for pre-trial detention. *Section 3142* is not permissive; the statute provides that a pre-trial defendant "shall" be released "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *18 U.S.C. § 3142(b)*. Had Congress intended for there to be an exception to this statutory scheme for removable aliens who can be detained under the INA, it surely could have said so. To the contrary, the Ninth Circuit has explained that Congress intended the Bail Reform Act to apply to removable aliens. See *Santos-Flores, 794 F.3d at 1090* ("Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings."). Congress was clearly aware of the potential interplay between the Bail Reform Act and the INA, and provided in the Bail Reform Act for temporary detention of a removable alien so that ICE may decide whether to detain an alien for removal. See *18 U.S.C. § 3142(d)*. Pursuant to *section 3142(d)*, if ICE chooses not to take custody of a removable alien prior to the [*11] arrestee's detention hearing, the arrestee "shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings." *Id.* The Government's position effectively reads a loophole into this statutory provision, opting instead for a "heads I win, tails you lose" approach.

If the Government's position in this case were correct, the language in *3142(d)* would be meaningless: ICE could always wait and see what the neutral and detached magistrate judge decides; if the magistrate judge decides to set conditions for an alien's release, then ICE could, swoop in with its detention authorities.

---

*2014 WL 1400690, at \*3 n.2 (D. Kan. Apr. 10, 2014)*.

[5] Following *Trujillo-Alvarez* and *Blas*, the Court construes Galitsa's motion as a motion to compel compliance with the Court's bail determination or, in the alternative, for contempt. See *Trujillo-Alvarez, 900 F. Supp. 2d at 1172*; *Blas, 2013 U.S. Dist. LEXIS 135283, 2013 WL 5317228, at \*3*.

See *Blas, 2013 U.S. Dist. LEXIS 135283, 2013 WL 5317228, at \*6* (rejecting the Government's position because it would "effectively [] make pretrial detention automatic in every case involving a violation of *8 U.S.C. § 1326(a)* and *(b)(2)*"). To countenance this interpretation of the Bail Reform Act, and permit Galitsa to be detained pending trial, despite a magistrate judge's unappealed ruling that he poses no irremediable risk of flight or danger to the community, would raise grave concerns under the *Due Process Clause of the Fifth Amendment*. See *United States v. Briggs, 697 F.3d 98, 101 (2d Cir. 2012)* (Pretrial detention is consistent [*12] with the *Due Process Clause* only if its purpose is regulatory, including to prevent danger to the community or ensure a defendant's presence at trial.); see also *United States v. Bass, 434 F.2d 1296, 1299 (2d Cir. 1970)* (It is a "cardinal principle" of statutory construction and constitutional law to interpret statutes, "if possible, to avoid a reading which would create serious constitutional doubts.").

The Government does not dispute that the Bail Reform Act provides the exclusive means to hold a defendant for criminal prosecution. Instead, the Government argues that there are two equal statutory schemes and that the Government, like a two-headed monster, can take advantage of both. The Government can seek the detention of a removable criminal defendant under the Bail Reform Act. If that argument is not successful, then it can use ICE's removal authority to achieve the same end, because, at some point in the future, the defendant will in fact be removed. See Hr'g Tr. at 7:8-12 ("[The Government]: It's [Galitsa's detention] for removal but it doesn't say in the [ICE] regulations that it has to be immediate removal. And pursuant to their regulations, they're not able to remove him if he has an active criminal case against him. Ultimately, he will be removed."). [*13] The Court disagrees.[6] It is obvious

---

[6] The Court has also considered the Government's argument that Galitsa's proper remedy is to seek collateral review of his ICE detention. Were Galitsa detained for an immigration purpose, the appropriate mechanism to challenge his detention would be to file a petition for habeas corpus pursuant to *28 U.S.C. § 2241*. But, as the Court explains *infra*, it is clear that Galitsa is not being detained for an immigration purpose; removing Galitsa from the country is currently impossible given existing regulations. See *infra* note 7. As such, the Bail Reform Act governs his detention and the Court has the authority to enforce the provisions of that statute and the Magistrate Judge's bail order. See *Trujillo-Alvarez, 900 F. Supp. 2d at 1180* ("A district court has inherent supervisory powers over its processes and those who appear before it.

that ICE is not holding Galitsa to remove him from the country. ICE has taken *no* steps since taking custody of Galitsa to effectuate his removal. See Hr'g Tr. at 3:17-20. The Court is hard pressed to see how ICE conceivably could be detaining Galitsa for an immigration purpose when ICE regulations prohibit Galitsa's removal until the conclusion of his criminal proceedings; a fact the Government conceded at the hearing. Hr'g Tr. at 4:16-23.[7] Thus, while the Government may say that ICE is not detaining Galitsa for the purpose of this criminal proceeding, H'rg Tr. at 7:4-12, the facts make clear that there can be no other reason for his detention at present.

In sum, the Court holds that the Government has to make a choice when it is dealing with a removable alien criminal defendant. It can forego prosecution, and detain and then remove the person through normal immigration proceedings or it can prosecute the person. What it cannot do is treat the United States Code like a take-out food menu whereby the Government can mix-and-match from column A (prosecution or removal) and from column B (Bail Reform Act or ICE detention rules). If the [*14] Government chooses to prosecute, then it must proceed in accordance with all the rules that govern criminal prosecutions. First and foremost among those rules is the Bail Reform Act. Thus, the Government must decide whether to continue the criminal case — and comply with the magistrate judge's release determination — or to proceed under the INA, dismiss this case, and remove Galitsa from the country. What the Government cannot do is have it both ways.[8]

## CONCLUSION

Mr. Galitsa's motion is GRANTED. By **12:00 noon on July 31, 2017**, the Government is directed to either dismiss the indictment against Galtisa or release him in accordance with the conditions of his bail.

**SO ORDERED.**

**Date: July 28, 2017**

**New York, New York**

/s/ Valerie Caproni

**VALERIE CAPRONI**

**United States District Judge**

---

End of Document

---

These supervisory powers include, but are not limited to, the ability 'to implement a remedy for a violation of recognized rights.'" (quoting *United States v. W.R. Grace, 526 F.3d 499, 511 n.9 (9th Cir.2008))*) (internal citations omitted).

[7] *Section 215.2* of ICE regulations provides that "no alien shall depart, . . . , from the United States if his departure would be prejudicial to the interests of the United States under the provisions of *Section 215.3*," *8 C.F.R. § 215.2*, and *Section 215.3* in turn provides that departure from the United States would be prejudicial if the alien is the subject of "any criminal case . . . pending in a court of the United States," *8 C.F.R. § 215.3(g)*.

[8] The Court declines to revisit Magistrate Judge Fox's bail determination. The Government could have, but did not, appeal Judge Fox's determination in May 2017. Its belated attempt to do so now by way of a footnote to its opposition brief is procedurally improper. See Gov't Opp'n at 8 n.4. In any event, the Court has reviewed Judge Fox's findings and independently weighed the factors required under *Section 3142(g)* and concludes that there are conditions that could be fashioned to reasonably assure Galitsa's appearance in this Court and the safety of the community. See *18 U.S.C. § 3142(e)*. The Court adopts the conditions of bail imposed by Judge Fox.