

No *Shepard's* Signal™
As of: October 3, 2018 2:46 PM Z

## *United States v. Vasquez-Benitez*

United States District Court for the District of Columbia

September 26, 2018, Decided

Criminal Case No. 18-275

**Reporter**
2018 U.S. Dist. LEXIS 165405 *

UNITED STATES OF AMERICA v. JAIME OMAR VASQUEZ-BENITEZ, Defendant.

## Core Terms

removable, detention, detain, reentry, aliens, courts, criminal prosecution, criminal charge, indictment, supervised release, proceedings, appearance, pretrial, detention hearing, speedy trial, charges, custody

**Counsel:** [*1] For JAIME OMAR VASQUEZ-BENITEZ also known as GUERO, also known as ALEX ANTONIO VASQUEZ, also known as JAIME HUREO, also known as JERMAN VASQUEZ-MATO, also known as JULIO ISRAEL VASQUEZ, also known as HERMAN EDUARDO VASQUEZ, Defendant: Mary Manning Petras, LEAD ATTORNEY, FEDERAL PUBLIC DEFENDER FOR THE DISTRICT OF COLUMBIA, Washington, DC.

For USA, Plaintiff: Brenda J. Johnson, LEAD ATTORNEY, U.S. ATTORNEY'S OFFICE, Criminal Division - National Security Section, Washington, DC; Kenneth Clair Kohl, LEAD ATTORNEY, U.S. ATTORNEY'S OFFICE FOR THE DISTRICT IF COLUMBIA, Washington, DC.

**Judges:** ROYCE C. LAMBERTH, United States District Court.

**Opinion by:** ROYCE C. LAMBERTH

## Opinion

### OPINION & ORDER

Pending before the Court is defendant's motion [19], which the Court construes as a motion to compel compliance with Judge Harvey's order [7] setting conditions for defendant's supervised release. The motion tasks the Court with striking the proper balance between the Judiciary's power to order pretrial release of a person charged with illegal reentry under the Bail Reform Act, *18 U.S.C. § 3142*, and the government's concurrent ability to detain that person to effectuate his removal under the Immigration & Nationality Act, *8 U.S.C. § 1231*. After considering the Bail [*2] Reform Act's structure and reasoning from first principles, the Court holds that because the government has chosen to bring criminal charges against defendant, a judicial order under the Bail Reform Act provides the sole avenue for detaining defendant while the charges are pending.

With the Court's exclusive power comes the responsibility to assure defendant's appearance in court and the safety of the community. See *§ 3142(c)*. A new indictment and new evidence requires the Court to determine whether circumstances have sufficiently changed to justify detaining defendant under the Bail Reform Act. To facilitate the Court's reconsideration of defendant's supervised release, the Court orders defendant to appear forthwith for further detention proceedings.

### I. Factual Background

A month into defendant's civil removal proceedings, the government filed a criminal complaint charging defendant with illegally reentering the United States in violation of *8 U.S.C. § 1326*. Customs officials transferred custody of defendant to the U.S. Marshals Service for a detention hearing before Judge Harvey, who released defendant pending trial. When Acting Chief Judge Boasberg denied the government's request to revoke release, the Marshals [*3] transferred defendant back to customs officials for continued removal proceedings. Several days later, defendant filed this motion, which the Court construes as a motion to compel compliance with Judge Harvey's order for supervised release.

The case was randomly reassigned to this Court after the grand jury returned an indictment. At arraignment, the government urged the Court to revisit defendant's detention status in light of the indictment and new factual evidence. The Court deferred reconsidering defendant's detention status until resolution of this motion.

## II. Discussion

Defendant's motion asks the Court to referee the incongruity between his current civil detention under the Immigration & Nationality Act (INA) and this Court's prior order under the Bail Reform Act (BRA) releasing him pending his criminal trial. In Section II.A of its opinion, the Court concludes the BRA must control the custody of a defendant charged with illegal reentry, regardless of the government's civil authority to hold him under the INA. But having resolved that tension, the Court is mindful of the need to properly wield its control. In Section II.B, considering the defendant's newly returned indictment and [*4] the government's recently discovered evidence, the Court decides to accept the BRA's invitation to reopen defendant's detention hearing in light of changed circumstances.

### A. Due to the pending criminal prosecution against the defendant, the BRA must control the terms of his confinement.

To equipoise the Judiciary's power under the BRA with the Executive's authority under the INA, this Section engages with the BRA and our Constitution's text, structure, and history. Both routes lead to the same conclusion: the BRA provides the exclusive means of detaining a defendant criminally charged with illegal reentry.

#### 1. The BRA's specific treatment of removable aliens criminally charged with illegal entry supersedes the INA's general mandate to detain removable aliens.

Defendant asks this Court to untangle the collision between civil detention of removable aliens under the INA and pretrial release of illegal reentry defendants under the BRA. By contrast, the government presents the INA and BRA as parallel proceedings in which the government can simultaneously detain a removable alien in one while litigating that alien's detention in the other. But unfortunately for the government, the BRA itself [*5] acknowledges the potential for the two paths to intersect.

The Supreme Court's statutory interpretation cases establish "that a precisely drawn, detailed statute pre-empts more general remedies," even where both "literally appl[y]." *Brown v. GSA, 425 U.S. 820, 834, 96 S. Ct. 1961, 48 L. Ed. 2d 402 (1976)*. This principle applies with added force when the more specific statutory scheme is also more recent. Cf. *Credit Suisse Sec. (USA) LLC v. Billing, 551 U.S. 264, 275, 127 S. Ct. 2383, 168 L. Ed. 2d 145 (2007)*. And when the more recent, more specific statutory scheme provides relief where none existed before, courts generally regard the new relief as exclusive. *Hinck v. United States, 550 U.S. 501, 506, 127 S. Ct. 2011, 167 L. Ed. 2d 888 (2007)*.

Prior to the initial version of the BRA passed in 1966, courts made pretrial detention decisions through a "dismal" system trading "freedom for money." Patricia M. Wald & Daniel J. Freed, *The Bail Reform Act of 1966: A Practitioner's Primer*, 52 A.B.A. J. 940, 940 (1966). By enacting the BRA, as amended in 1984, Congress-offered noncapital defendants a statutory right to be released on personal recognizance or unsecured bond absent a judicial determination "that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *§ 3142(b)*.

And though the INA had given the Executive general authority to detain removable aliens since 1952, the BRA specifically [*6] empowered courts to detain removable aliens criminally charged with illegal reentry. *Section 3142(d)* allows courts to detain defendants charged with illegal reentry for ten days while the government determines whether to pursue criminal sanction or civil removal—but not both. If the government declines to initiate civil removal proceedings within ten days, *§ 3142(d)* requires the court to proceed with the alien's criminal prosecution "in accordance with the other provisions" of the BRA, "notwithstanding the applicability of other provisions of law governing . . . deportation."

The BRA's specific provision for detaining removable aliens charged with illegal reentry must thus trump the INA's general authority to detain removable aliens. *Section 3142 of the BRA* operates with greater precision and detail than *§ 1231 of the INA*, it is more recent, and its remedy is exclusive. The BRA controls the detention of a removable alien charged with illegal reentry.

### 2. The Judiciary must control criminal defendant's custody to effectively oversee his pending criminal prosecution.

Giving the BRA exclusive authority over a criminal defendant's pretrial detention is not only faithful to the Supreme Court's statutory interpretation caselaw—it is required by our system [*7] of criminal justice. Reasoning from first principles, and heeding the Court of Appeals's "counsel against interpreting statutes . . . in a manner that would impinge" on each branch's "constitutionally rooted primacy," *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 737, 422 U.S. App. D.C. 65 (D.C. Cir. 2016), the Court concludes the government's invocation of concurrent and independent detention authority under the INA runs counter to our Constitution's text, structure, and history. Courts must be able to supplant the government's detention authority under the INA in order to effectively administer criminal justice.

The criminal procedure contemplated by our constitutional structure firmly situates the balance of discretion pre- and post-trial in the Executive. "Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." *United States v. Batchelder*, 442 U.S. 114, 124, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979); e.g., U.S. Const. art. II, §§ 2-3; see also *Fokker Servs. B.V.*, 818 F.3d at 737 ("The Constitution allocates primacy in criminal charging decisions to the Executive Branch."). Similarly, decisions to dismiss charges lay "at the core of the Executive's duty to see to the faithful execution of the laws." *Cmty. for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201, 252 U.S. App. D.C. 37 (D.C. Cir. 1986). What is more, after a sentence is imposed, the Executive may "grant Reprieves and Pardons." U.S. Const. art II, § 2, cl. 1. "[J]udicial authority is . . . at its [*8] most limiter when reviewing this discretionary role in the criminal process. *Cmty. for Creative Non-Violence*, 786 F.2d at 1201.

But what the Judiciary lacks in initial discretion it makes up for in ultimate authority while charges are pending. See *Offutt v. United States*, 348 U.S. 11, 13, 75 S. Ct. 11, 99 L. Ed. 11 (1954) (recognizing the Judiciary's "supervisory authority over the administration of criminal justice in the federal courts" under the Constitution). Absent rebellion or invasion, the Constitution vests final say over ongoing civil and criminal detention in the Judiciary. See, e.g., U.S. Const. art. II, § 9, cl. 2; Art. III. Having made the decision to bring criminal charges, the Executive cedes control over the defendant to the court. If it comes to regret that choice, the Executive may regain control before sentencing by reversing its decision to charge the defendant, or after sentencing through the pardon power. But so long as criminal charges remain pending, the Executive no longer has the final word.

Remedies available at the Founding reinforce judicial primacy in situations like defendant's. In 1787, removable aliens detained by the Executive for violating naturalization laws could judicially challenge their detention as an erroneous application or interpretation of the immigration statutes. *INS v. St. Cyr*, 533 U.S. 289, 301-05, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001) (collecting cases). Judicial [*9] supremacy over the detention of an individual charged with illegal reentry is thus perfectly consistent with the Framers' original intent.

Modern constraints dictate the same result. Take the Speedy Trial Act, 18 U.S.C. §§ 3161-3174, which requires courts to comply with strict time limits governing a criminal prosecution. How can a court comply with mandatory time limits if unable to compel a defendant's appearance? The BRA empowers district courts to abide by the Speedy Trial Act by holding a defendant pretrial, or by releasing a defendant with the power to revoke release if the defendant refuses to appear. But if the executive branch has independent authority to hold a criminal defendant, the court must resort to a writ of *habeas corpus ad prosequendum* in order to comply with the Speedy Trial Act. Indeed, the Court did so here, merely to secure defendant's appearance at a pretrial hearing. Cf. *Crawford v. Jackson*, 589 F.2d 693, 696, 191 U.S. App. D.C. 170 (D.C. Cir. 1978) ("When an accused is transferred pursuant to a writ of *habeas corpus ad prosequendum* he is considered to be on loan' to the [receiving] authorities so that the [sender's] jurisdiction over the accused continues uninterruptedly."). And even that writ would be powerless to resolve a situation where the Executive refuses [*10] to comply.

Accepting the government's independent authority to hold a criminal defendant would spin our constitutional order in circles. That cannot be the law. The Executive may not skirt this Court's decision setting the terms of defendant's release under the BRA any more than it could disregard a hypothetical court's order to turn the defendant over for speedy trial.

* * *

Jurists since Coke have upheld as sacrosanct the great maxim *nemo potest esse simul actor et iudex*: no one can be both litigant and judge at the same time. The Framers safeguarded this legal norm by ensuring that the Judiciary's ability to oversee detention supplants the Executive's concurrent authority to detain the defendant civilly. And Congress incorporated it into the BRA'S text by cabining the government's ability to detain removable aliens once they are charged with illegal reentry. Taking account of both the constitutional rule and the statutory text, this Court holds that because of defendant's pending criminal prosecution for illegal reentry, the government cannot simultaneously hold him civilly to effectuate his removal. For defendants charged with illegal reentry, the BRA—not the INA—dictates their detention **[*11]** status.

In announcing this rule, the Court also points out some limits. For one, this holding does not divest the government's authority to effectuate defendant's removal while criminal charges are pending. The government can continue to adjudicate defendant's civil immigration status, and—if it drops the criminal charges first—it can remove him the instant that remedy becomes available under the INA. The government just cannot hold him under the INA while criminal charges for illegal reentry are pending.

Nor must the government be content letting the defendant out on supervised release. The government can forgo criminal prosecution and revert to detaining the defendant under the INA. But so long as the government invokes the jurisdiction of a federal court, the government must consent to the Court's custodial dominion over the criminal defendants appearing before it.

Indeed, the long-run effect of this legal rule might be that the government will stop bringing criminal prosecutions for illegal reentry, and instead exclusively pursue removal proceedings. That may leave would-be defendants worse-off, languishing without speedy trial rights—and without the possibility of credit for time **[*12]** served—in ICE detention centers farther away from their families, friends, and counsel. Nevertheless, the government can do that under the INA. But by independently detaining the defendant while simultaneously pursuing criminal prosecution, the Executive flouts Congress's judgment and stymies the Judiciary's ability to administer justice. Because the government has chosen to pursue criminal charges against this defendant before this Court, this Court's authority to set him free under the BRA supplants the government's ability to detain him under the INA.

**B. The Court orders the defendant to appear for consideration of whether he should be held under the BRA in light of the indictment and new evidence.**

Having vindicated its authority to control the defendant's custody, the Court now exercises it. The BRA authorizes district courts to reopen detention hearings when previously nonexistent, material information [i]s brought to light." *United States v. Peralta, 849 F.2d 625, 626-27, 270 U.S. App. D.C. 294 (D.C. Cir. 1988)*; accord *18 U.S.C. § 3142(f)(2)*.

Since defendant's last detention hearing, the grand jury returned a criminal indictment and the government obtained new evidence about the factual circumstances underpinning defendant's outstanding arrest warrant in El Salvador. This information "has **[*13]** a material bearing" on "whether there are conditions of release that will reasonably assure" not only defendant's appearance in court, but also "the safety of . . . the community." *§ 3142(f)(2)*. The Court thus finds it necessary to revisit defendant's supervised release conditions considering these changed circumstances.

**III. Conclusion**

The Court **GRANTS** defendant's motion [18] in so far as it compels compliance with Judge Harvey's order [7] setting the conditions for defendant's supervised release and **ORDERS** the government to release defendant in accordance with that order. The Court also **ORDERS** the defendant to appear forthwith for a detention hearing in light of the new indictment and evidence.

/s/ Royce C. Lamberth

ROYCE C. LAMBERTH

United States District Court

9/26/18

Date

End of Document